IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VIAVI SOLUTIONS INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00378-JRG |
| | § | |
| ZHEJIANG CRYSTAL-OPTECH CO LTD., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Viavi Solutions Inc.'s ("Viavi") Motion for Leave to Effect Alternative Service (the "Motion"). (Dkt. No. 6). Having considered the Motion and the applicable law, and for the reasons set forth herein, the Court finds that the Motion should be **GRANTED**.

**I.   BACKGROUND**

On October 7, 2021, Viavi filed the above-captioned case against Defendant Zhejiang Crystal-Optech Co Ltd. ("Crystal China") asserting claims of patent infringement. (Dkt. No. 1). According to Viavi, it then "promptly initiated service proceedings on Crystal China through the Hague Convention." (Dkt. No. 6 at 1). Crystal China's leadership consists of, *inter alia*, Min Lin (Chairman) and Ping Zheng (Chief Financial Officer). (Dkt. No. 6-2 at 8). Notwithstanding Crystal China's foreign status, it does appear to have a U.S. subsidiary known by a similar name, Crystal-Optech Technology (California) Co., Ltd. ("Crystal USA"). (Dkt. No. 6 at 2; Dkt. No. 6-5). According to records submitted with Viavi's Motion, Crystal USA's leadership consists of Min Lin (Chief Executive Officer), Ping Zheng (Chief Financial Officer), and Matthew Lippert (Secretary). (Dkt. No. 6-5). Although Viavi has already provided notice of this lawsuit to "Viavi's

main contact [at Crystal China] during the pre-suit negotiations," Viavi has received no indication—more than six months later—that service of Crystal China has been effected through the Hauge Convention. (Dkt. No. 6 at 1–2). Accordingly, Viavi filed the instant Motion on March 7, 2022 seeking leave to serve Crystal China: (1) through its U.S. subsidiary, Crystal USA, by traditional means; or (2) through e-mail via the employee that was party to the negotiations between the two companies prior to Viavi filing this suit. (Dkt. No. 6 at 9).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 4(h)(2), a foreign corporation, partnership, or other unincorporated association located outside the United States must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, states that an individual in a foreign country may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (C) unless prohibited by the foreign country's law, by:
> >
> > > (i)   delivering a copy of the summons and of the complaint to the individual personally; or
> > > (ii)  using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(f)(3)—authorizing court-ordered service "by other means not prohibited by international agreement"—is "not a 'last resort' or a type of 'extraordinary relief' for a plaintiff seeking to serve process on a foreign defendant." *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). To the contrary, Rule 4(f)(3) "stands independently, on equal footing" with other methods of service under Rule 4(f). *Id.* (quoting *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010)). However, courts must be mindful that "Rule 4(f)(3) was not meant to displace the other rules for service in every instance in which alternative means of service are seen as more convenient." *Id.*

Accordingly, courts typically order service under Rule 4(f)(3) after considering the delay and expense of conventional means of service in conjunction with other special circumstances that justify court intervention. *Id.*; *see also SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 2020 WL 6578411, at *1 (E.D. Tex. June 15, 2020) (noting that plaintiffs had attempted service pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents). District courts are granted broad discretion in making such a determination. *OnePlus*, 2021 WL 4130643, at *3–4.

Once a district court has exercised its discretion and determined that service under Rule 4(f)(3) is warranted, the court must consider whether the requested means of alternative service comports with due process as to each defendant. *SIMO Holdings*, 2020 WL 6578411, at *2; *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) (citing *RPost Holdings, Inc. v. Kagan*, 2012 WL 194388, at *2 (E.D. Tex. Jan. 23, 2012)). "Due process, in turn, requires 'reasonable notice and an opportunity to be heard.'" *ZTE Corp.*, 2018 WL 3330022, at *5 (citing *Gramercy Ins. Co. v. Kavanagh*, 2011 WL 1791241, at *1

3

(N.D. Tex. May 10, 2011)). "[T]he method of service crafted must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *RPost*, 2012 WL 194388, at *2 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 312 (1950)).

### III.     DISCUSSION

As a preliminary matter, the Court finds that the requested forms of alternative service are not prohibited by international agreement because neither method falls within the scope of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Compliance with the Hague Convention is mandatory when the requested method of service is effectuated within the territory of the foreign signatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Here, Viavi seeks to serve a domestic entity, Crystal USA. Further, the Hague Convention did not displace Fed. R. Civ. P. 4(f)(3), and thus e-mail service effected pursuant to Fed. R. Civ. P. 4(f)(3) does not implicate the Hague Convention. *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018).

#### A.     The Circumstances of this Case Allow for Alternative Service Under Rule 4(f)(3)

The Court finds that delay and the previous attempts of Viavi to effectuate service weigh in favor of granting alternative service under Rule 4(f)(3). First, courts have recognized that the multi-month delay of service under the Hague Convention supports a grant of alternative service under Rule 4(f)(3). *See Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*, 2014 WL 11342502, at *3 (W.D. Tex. Jul. 2, 2014); *SIMO Holdings*, 2020 WL 6578411, at *2; *ZTE Corp.*, 2018 WL 3330022, at *5. Such delay is particularly apparent with respect to Crystal China. This case has been pending since October 7, 2021—with service through the Hague Convention initiated shortly thereafter—yet over six months later, Crystal China has yet to be served or make an appearance.

Thus, service under Rule 4(f)(3) is appropriate because without it, there would be further delay in service under the Hague Convention.[1]

Beyond the delay, the Court finds that Viavi's attempt to first secure service under the Hauge Convention when the case was filed last fall weighs in favor of alternative service. In other words, this is not a case where the plaintiff is attempting to bypass formal service under the Hague Convention. In fact, Viavi has attempted to effectuate such service and—many months later—has been met with continued silence. In view of the foregoing, the Court finds that alternative service is appropriate.

### B.  Service on Crystal USA Through Traditional Means and Service of Crystal China via E-mail Comport with Due Process

The Court finds that Viavi's requested alternative service on Crystal USA through traditional means and Crystal China via e-mail is reasonably calculated, under all of these circumstances, to apprise Crystal China of the pendency of the action and afford it an opportunity to present their objections.

**Service on Crystal USA Through Traditional Means**: Two of the three executives of Crystal USA are also executives of Crystal China: Min Lin and Ping Zheng. (Dkt. No. 6-2 at 8; Dkt. No. 6-5). The lone Crystal USA executive who, based on the materials before the Court, does not appear to be a Crystal China executive is Mr. Matthew Lippert. (Dkt. No. 6-5). However, according to Mr. Lippert's LinkedIn page, he holds himself out as working for Crystal China—rather than Crystal USA. (Dkt. No. 6-4) (showing title as "U.S. Director at Zhejiang Crystal-Optech Co., Ltd."). The Court is persuaded that such shows that service on Crystal USA through traditional means is reasonably calculated to apprise Crystal China of the pendency of this action.

---

[1] However, the Court declines to find that any delay associated with service through the Hague Convention alone is sufficient to justify a grant of alternative service. Instead, the efficiency of alternative service is an initial consideration that weighs in favor of granting relief under Rule (4)(f)(3).

**Service of Crystal China via E-mail**: Viavi requests service on Crystal China via e-mail in the event the Court does not grant service of Crystal USA. (Dkt. No. 6 at 9). Viavi engaged in pre-suit negotiations, via e-mail, with Crystal China. (*Id.* at 1, 6). According to Viavi, said discussions occurred with an individual named Mr. Lijian Jin who is allegedly the Vice President and General Manager of Crystal China. (*Id.* at 6). Although Viavi only includes an e-mail it sent to Mr. Jin (Dkt. No. 6-6)—rather than any correspondence from Mr. Jin—the Court finds that service of Crystal China via e-mail *in addition* to service on Crystal USA is reasonably calculated to apprise Crystal China of the pendency of this action.

## IV.  CONCLUSION

For the reasons set forth above, Viavi's Motion is **GRANTED**. Accordingly, it is **ORDERED** that Viavi serve Crystal China through its U.S. subsidiary, Crystal USA, by traditional means. Viavi is further **ORDERED** to serve Crystal China through Mr. Jin's e-mail. The e-mail sent for this purpose must include the same information that would be delivered through traditional in-person delivery. Upon completion of such e-mail service, Viavi shall file a Notice supported by a clear personal declaration as to the completion of such e-mail service, together with a copy of the e-mail as sent and such supporting receipts and/or other relevant documents, all of which shall make clear the ways and means—together with the effective date—of such service upon Crystal China.

**So ORDERED and SIGNED this 28th day of April, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE