IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VIAVI SOLUTIONS INC., | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 2:21-CV-00378-JRG |
| ZHEJIANG CRYSTAL-OPTECH CO LTD., | § § § | |
| *Defendant*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (the "Motion to Dismiss") (Dkt. No. 27) filed by filed by Defendant Zhejiang Crystal-Optech Co Ltd. ("Crystal" or "Defendant"). In the Motion, Defendant contends that dismissal of the above-captioned case is warranted because personal jurisdiction is not proper in the Eastern District of Texas. (Dkt. No. 27 at 1). Also before the Court are Defendant's Opposed Motion to Stay Pending Inter Partes Review ("Motion to Stay") (Dkt No. 37) and Opposed Motion to Transfer to the Northern District of California Pursuant to 28 U.S.C. § 1404 ("Motion to Transfer") (Dkt. No. 38). Having considered the Motion to Dismiss, Motion to Stay, Motion to Transfer (collectively, the "Motions"), and all related briefing, the Court is of the opinion that the Motions should be **DENIED**.

I.   **BACKGROUND**

Plaintiff Viavi Solutions Inc. ("Viavi") filed a multi-patent complaint against Crystal alleging that Crystal infringes Viavi's Asserted Patents through their manufacture and sale of low angle shift optical filters that employ hydrogenated silicon layers as a high refractive index layer (the "Filters"). (Dkt. No. 1 at 3). Viavi subsequently amended its complaint to include additional

factual allegations. (Dkt. No. 24). Thereafter, Crystal filed its Motion to Dismiss alleging the Amended Complaint should be dismissed for lack of personal jurisdiction. (Dkt. No. 27). Crystal subsequently filed its Motion to Stay and Motion to Transfer asserting that this case should either be stayed or transferred to the Northern District of California. (Dkt. Nos. 37 and 38).

## II. LEGAL STANDARD

### A. Motion to Dismiss

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

Personal jurisdiction exists over a defendant where "a forum state's long-arm statute permits service of process" and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citations omitted).

The Due Process Clause requires that a defendant have sufficient minimum contacts with the forum to confer either general or specific personal jurisdiction. *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 592 (E.D. Tex. 2019). For due process to be satisfied pursuant to specific jurisdiction, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (citation omitted). "A court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174 (1985)). The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)).

Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003). In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may also exist under Federal Rule of Civil Procedure 4(k)(2), which provides that, "[f]or a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltd.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009)). In analyzing Rule 4(k)(2), a court must consider whether "(1) defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion

of personal jurisdiction is reasonable and fair." *M-I Drilling Fluids*, 890 F.3d at 999. The due process analysis for specific jurisdiction and Rule 4(k)(2) are similar; however, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id*. (quoting *Synthes*, 563 F.3d at 1295).

### B. Motion to Stay

The district court has the inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Techs. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015). "[The] most important factor bearing on whether to grant a stay in this case is the prospect that the *inter partes* review proceeding will result in simplification of the issues before the Court." *Id*. at *4.

### C. Motion to Transfer

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Court of Appeals for the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private-interest factors include (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id.* The public interest factors include (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Absent such an elevated showing, plaintiff's choice of venue must be respected. *Id.* "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

### III.   DISCUSSION

#### A.   Motion to Dismiss

Crystal is a Chinese company. (Dkt. No. 17–2 at ¶ 3). Crystal's Filters are manufactured and sold in China to other Chinese companies. (*Id.* at ¶ 3, 5). Ultimately, Crystal's Filters are sold to Samsung for use in Samsung's Galaxy cellphones. (Dkt. Nos. 24–8, 24–11). The Galaxy cellphones are then exported to the United States for sale throughout the country, including in the Eastern District of Texas. (Dkt No. 24 at 9).

Crystal argues that there is no basis for the exercise of personal jurisdiction for two reasons. (Dkt. No. 27). First, Crystal contends that Viavi's Amended Complaint fails to adequately allege the induced infringement necessary to support specific jurisdiction. (*Id.*). Second, the Amended Complaint also fails to adequately allege a valid stream of commerce theory. (*Id.*). These arguments are addressed in turn.

Viavi's claim is limited to induced infringement. (Dkt. No. 24 at 10). In order to succeed on its induced infringement claim, Viavi must show "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018). Such direct infringement must occur in the United States. *Id*. at 408. Crystal argues that Viavi not plead either any direct infringement in the United States, or that Crystal possessed the specific intent to encourage another's inducement. (Dkt. No. 27 at 9). Crystal cites *Halo*[1] and *Largan*[2] for the proposition that stronger evidence than the allegations contained in Viavi's Amended Complaint are necessary to prove direct infringement. (*Id*. at 9, 10). Specifically, Crystal argues that "the Amended Complaint demonstrates that Plaintiff does not have any evidence that the Filters that are the subject of the claim charts attached to the Amended Complaint as Exs. A-C were manufactured by Crystal." (*Id*. at 9). In other words, Crystal's asserts that there is a lack of evidence to support Viavi's direct infringement claim. (*Id*.).

Viavi responds that the Amended Complaint clearly spells out direct infringement by Samsung. (Dkt. No. 34 at 9). For example, the Amended Complaint alleges, "Samsung mobile phones and tablets having the Crystal Infringing Filters, e.g., the Samsung Galaxy S20+ 5G and Galaxy Note10+ 5G mobile phones, have been offered for sale and sold in the United States, thus demonstrating that at least Samsung directly infringes the Asserted Patents." (Dkt. 24 at ¶ 13). The Amended Complaint also alleges that "as Samsung's mobile phones and tablets are widely sold, there is also circumstantial evidence that other non-parties, e.g., users and retailers, have at least used, offered for sale, and/or sold these mobile phones and tablets in the United States. Thus, direct infringement by another needed to show indirect infringement exists." (*Id*. at ¶ 14); *see also* ¶ 11

---

[1] *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371 (Fed. Cir. 2014).
[2] *Largan Precision Co. Ltd. v. Genuis Electronics Optical Co., Ltd.*, 646 Fed. Appx. 946 (Fed. Cir. 2016).

(describing "Samsung's significant sales of products including the Crystal Infringing Filter in the United States and in this District"). With respect to the element of intent, Viavi alleges that Crystal has been "specifically designing, developing, manufacturing, and selling the Crystal Infringing Filter for incorporation into 3D motion sensing modules incorporated into downstream products, e.g., mobile phones and/or tablet devices offered by sale and sold by Samsung Electronics . . . into the United States, including this District." (*Id*. at ¶ 11). Further, Crystal undertakes "these activities with knowledge or at least willful blindness to Samsung's significant sales of the products including the Crystal Infringing Filter in the United States and in this District." (*Id*.).

The Court is persuaded that Viavi has plead sufficient jurisdictional facts to support its claim of induced infringement against Crystal. Crystal's reliance on *Halo* and *Largan* is unpersuasive. Those decisions concerned whether or not the respective district courts erred in granting summary judgment of no induced infringement because the plaintiffs failed to prove direct infringement in the United States. That is not the issue before this Court. At this stage, the Court finds that Viavi has pled sufficient jurisdictional facts to support its induced infringement claim.

With respect to Crystal's stream of commerce argument, Crystal argues that Texas applies the "Stream of Commerce Plus" theory and that under such theory, this Court does not have jurisdiction over Crystal. (Dkt. No. 27 at 11). Crystal contends that the "additional conduct" required under the "plus" test is not met here as no such conduct is alleged in the Amended Complaint. (*Id*. at 12). Viavi's Amended Complaint discusses its reverse engineering of a Galaxy phone and how such reverse engineering resulted in Viavi's belief that the phone contains a Filter manufactured by Crystal. (Dkt. No. 24 at ¶ 12). However, Viavi has not plead that the Galaxy phone was reverse engineered in the Eastern District of Texas. (Dkt. No. 27 at 3). Further, Crystal submitted the declaration of Lijian Lin wherein he states that Crystal does not have an agreement

7

with Samsung and that its Filters cannot "be directly incorporated into a smartphone or tablet." (Dkt. No. 17-2 at ¶ 8). Crystal argues the Federal Circuit's *Celgard* opinion is directly on point. (Dkt. No. 27 at 14). There, the Federal Circuit affirmed a dismissal for lack of personal jurisdiction and rejected the application of the stream of commerce theory, even under the more relaxed standard of *Asahi*. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373 (Fed. Cir. 2015). In *Celgard*, the plaintiff owned a patent covering separator technology for battery membranes. *Id*. at 1375-76. The Korean defendant manufactured and sold allegedly infringing batteries in South Korea, but not in the United States, and had no control over where or to whom its customers subsequently sold or distributed the accused batteries. *Id*. at 1376. The Federal Circuit held that the plaintiff was not able to meet even the Brennan stream of commerce theory because the plaintiff failed to present evidence that the Defendant was aware that its products were marketed in the forum state, or that the products were even in the forum state (or would be making their way there). *Id*.

Viavi responds that both the Brennan and O'Connor stream of commerce tests are met in this case. (Dkt. No. 34 at 12, 13). Viavi's Amended Complaint alleges that Crystal supplies the Filters to Samsung through one or more of its intermediary suppliers specifically for inclusion into lens assemblies that are subsequently incorporated into the 3D motion sensing camera modules. (Dkt No. 24 at ¶ 11). According to Viavi, the Crystal Filters enable Samsung's Time of Flight ("ToF") technologies (e.g., DepthVision camera) in the Samsung Galaxy S20+ 5G, Galaxy Note10+ 5G, and Galaxy S20 Ultra 5G mobile phones. (*Id*. at ¶ 11, 17-18). These Samsung mobile devices have been used, offered for sale, sold, and imported into the United States, including this District. (*Id*. at ¶ 11; Ex. A). Indeed, a Samsung U.S. entity, Samsung Electronics America Inc., maintains several facilities in this District including in Plano, Richardson, and Frisco, Texas. (Dkt. No. 24 at ¶ 30). Viavi contends that the Brennan stream of commerce test is satisfied because

8

Crystal "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers" in this State. (Dkt. No. 34 at 12). *Beverly Hills Fan.*, 21 F.3d at 1566. Viavi further argues the more stringent O'Connor test is also satisfied because the Amended Complaint demonstrates Crystal supplies the Filters into the supply chain "knowing Samsung (or one of its intermediary suppliers) would be importing these products into the United States and offering for sale and selling these products to consumers in the United States" and this District. (*Id*. at 13). Viavi contests the applicability of *Celgard* because Crystal cannot factually dispute that the Samsung phones containing the Crystal Filters were present in the United States, Texas, and this District. (*Id*. at 15). Viavi contends that, similar to the facts in *Largan*, Crystal "intentionally placed its [LAS optical filters] in a distribution chain flowing from Asia to the United States and Texas;" Crystal "sought out the United States market, evidenced . . . by seeking . . . patent protection there;" Crystal "had a commercial relationship with [Samsung]; and [Crystal] accessed the Texas consumer-electronics market vis-à-vis that relationship." (*Id*. at 14, 15). *Largan v. Ability*, 2020 WL 569815 at *8 (E.D. Tex. February 5, 2020). Given Crystal's relationship with "U.S. smartphone giants," Viavi contends that the exercise of jurisdiction in the Court would be fair and reasonable. (*Id*. at 15). Further, Viavi argues that jurisdiction is also proper under Fed. R. Civ. P. 4(k)(2) as this patent infringement suit arises under 35 U.S.C. § 1 *et seq*, Crystal contends it is not subject to jurisdiction in this District or anywhere else in the United States, and the exercise of jurisdiction comports with due process given Crystal's purposeful availment from the sales of Samsung phones in the District. (*Id*. at 16).

    The Court agrees with Viavi. The Court must resolve all conflicts between the facts contained in the parties' affidavits and other documentation in Viavi's favor. *Aten Int'l v. Emine Tecjh Co*., 261 F.R.D. 112, 118 (E.D. Tex. 2009). The documents attached to Viavi's Amended Complaint

make a *prima facie* showing that Crystal places its Filters in a distribution chain and that such Filters ultimately arrived in the United States market through, at least, Samsung's Galaxy phones. Crystal does not dispute that the Galaxy phones are sold in the United States, including in this District. Although Crystal attempts to distance itself from Samsung, if the Crystal Filters were not incorporated into the phones, then Mr. Jin's declaration certainly would have directly disputed such. However, Mr. Jin's declaration contains no such assertion. Instead, the record reflects that Crystal, through its sales of Filters for application in Samsung Galaxy phones, knew (or should have reasonably known) the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court here. *Beverly Hills Fan,* 21 F.3d at 1566*; ATEN Intern. Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009). Based on the foregoing, the Court is persuaded that, under either formulation from *Asahi*, Viavi has made the required jurisdictional showing. The lengthy and complex distribution chain, like the one in *Largan*, does not "insulate [Crystal] from suit in Texas." *Largan*, 2020 WL 569815 at *8. Accordingly, Defendant's Motion to Dismiss (Dkt No. 27) should be **DENIED**.

### B. Motion to Stay

Given the Court's finding of jurisdiction, it now turns to Crystal's Motion to Stay. Crystal filed IPR2022-01184 against U.S. Patent No. 9,588,269 on July 11, 2022, IPR2022-01183 against U.S. Patent No. 10,222,526 on July 12, 2022, and IPR2022-01281 against U.S. Patent No. 11,131,794 on July 18, 2022. (Dkt No. 37 at 5). The Court notes that the petitions discussed in the IPR Motion have not been instituted upon by the PTAB. It is the Court's established practice to consider that motions to stay pending IPR proceedings which have not been instituted are inherently premature and should be denied as such. At this nascent stage of the PTAB proceedings, it is impossible for

the Court to determine "whether the stay will likely result in simplifying the case before the court." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058-WCB, 2015WL10691111, at *2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). Indeed, if the PTAB denies institution of the IPRs, there will be no simplification of the case before the Court at all. Accordingly, having considered the factors for determining whether to grant a stay pending IPR, the Court finds that Defendant's Motion to Stay (Dkt. No. 37) should be and hereby is **DENIED**.

### C. Motion to Transfer

The Court next considers Crystal's Motion to Transfer. Crystal petitions the Court to transfer this dispute to the Northern District of California ("N.D. Cal.") for the convenience of the parties and the witnesses.

### i. Jurisdiction in Proposed Transferee Court

The threshold inquiry to a motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Viavi argues that Crystal has failed to demonstrate that this case could have been filed in N.D. Cal., which is fatal to Crystal's Motion to Transfer. (Dkt. No. 41 at 6). As noted above, Crystal contends it is not subject to jurisdiction in this District or anywhere else within the United States. (Dkt. No. 38 at 5). Viavi cites *Japan Display* for the proposition that because Crystal has not demonstrated that N.D. Cal. is an appropriate forum, "the Court has no ability to transfer, regardless of how convenient or inconvenient the transfer may be." (*Id.*). *Japan Display Inc v. Tianma Microelectronics Co.*, 2021 WL 3772425 at *2 (E.D. Tex. August 25, 2021). Crystal attempts to distinguish *Japan Display* on the basis that unlike the defendant there, it has not withdrawn its Motion to Dismiss. (Dkt. No. 44 at 2). This distinction, however, does nothing to walk back Crystal's clear contention that "no court in the U.S. has personal jurisdiction over

[Crystal]." (Dkt. No. 38 at 5). Crystal argues that if the Court finds that it has jurisdiction in this proceeding, then the N.D. Cal. must also have jurisdiction over the dispute as well. (Dkt. No. 44 at 2, 3). This is not necessarily true. In fact, Crystal has put the Court in the impossible position of asking it to agree that Crystal has met its burden of establishing that the N.D. Cal. is a judicial district in which the claim could have been filed while also asking the Court to agree that no jurisdiction has the authority to hear this claim.[3] Crystal cannot have it both ways. Accordingly, the Court finds that Crystal has not meet its threshold burden to establish that this case could have been originally brought in the Northern District of California. This should end the inquiry. However, in abundance of caution and for the sake of completeness, the court considers the following additional issues.

### ii. **Crystal Has Not Shown That the Northern District of California is Clearly More Convenient**

Even if Crystal had adequately met its initial burden, which it has not, the Court is of the ultimate opinion that Crystal has not shown that the N.D. Cal. is clearly more convenient when considering the private and public interest factors.

#### a) Private Interest Factors

##### (1) The Relative Ease of Access to Sources of Proof

The first private interest factor this Court analyzes is the relative ease of access to sources of proof, including documentary and other physical evidence. *See Volkswagen II*, 545 F.3d at 315. Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these

---

[3] Crystal's reliance on the concurrence in *In re Meraki* is unpersuasive. There, the defendant did not contest that all jurisdictions have general jurisdiction over it. *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. Shenzhen Tech., Ltd.*, No. 6:20-cv-00876- ADA, 2022 U.S. Dist. LEXIS 58666, at *21 (W.D. Tex. Mar. 25, 2022). Crystal has made no such concession here.

sources. *See id.* at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). Parties must specifically identify and locate sources of proof and explain their relevance. *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018).

Crystal argues that neither party has identified any witness or documents located in this District. (Dkt. No. 38 at 10). Crystal further contends that Viavi's assertion that Crystal's California subsidiary ("Crystal California") "evidences Crystal's efforts to expand its share of the United States market for LAS optical filters" supports transfer to N.D. Cal. (Dkt. Nos. 34 at 10 and 38 at 10). Ironically, the same subsidiary that Crystal attempts to distance itself from in its Motion to Dismiss[4] is now in Crystal's Motion to Transfer presented as a significant player which warrants transfer to N.D. Cal. Crystal further argues that Viavi's northern California headquarters justify transfer to N.D. Cal. as the Viavi witnesses and documents are located in N.D. Cal. (Dkt. No. 34 at 10).

Viavi responds that Crystal has not identified, in discovery or otherwise, any evidence located in N.D. Cal. (Dkt. No. 41 at 7). Viavi argues that the presence of Viavi's documents in California should be afforded minimal weight and is immaterial. (*Id*. at 8). *Intertrust Techs. Corp. v. Cinemark Holdings, Inc*., 2020 U.S. Dist. LEXIS 208572 at *14 (E.D. Tex. Sep. 30, 2020). Viavi goes on to argue this case is akin to cases where "sources of proof originate from varied locations across the country and the globe," and therefore, "this factor is neutral." (*Id*.).

Although minimal weight is given to the location of Plaintiff's documents, when compared with the location of Defendant's disclosed documents (China), this factor weighs slightly in favor

---

[4] Specifically, Crystal argues that "the Amended Complaint does not allege that Crystal California sells, offers for sale or imports any of the accused products. The Amended Complaint does not allege what, if any, relationship Crystal California has to Crystal. In short, no facts are pleaded that would make Crystal California relevant to the personal jurisdiction issue." (Dkt. No. 27 at 3).

of transfer to N.D. Cal. Neither party identified sources of proof in the Eastern District of Texas. While Viavi maintains that its documents in California are "immaterial," it is unlikely that there is not a single relevant document at its offices there. Moreover, even though Viavi contends that "sources of proof originate from varied locations across the country," the only domestic source of proof identified by either party comes from Viavi's California headquarters. Some, but clearly minimal weight should be given to the presence of Viavi's documents in N.D. Cal. However, since it is Crystal who bears the burden of proof and it has not demonstrated that any of the documents in California to be relevant, this factor must be largely discounted.

### (2) The Availability of Compulsory Process to Secure the Attendance of Witnesses

"A court cannot compel non-party witnesses to travel more than 100 miles from their homes or work to provide testimony." FED. R. CIV. P. 45(c)(1)(A). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor. *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)).

Crystal argues that witnesses it may call at trial are located in California. (Dkt. No. 38 at 11). Specifically, Crystal points to the inventors, employees of Crystal California, and Samsung employees located at Samsung Research America, Inc., which is headquartered in N.D. Cal. (*Id.*).

Viavi disputes that the location of the inventors should carry any weight given their employment at Viavi and that they "can be expected" to appear for deposition or trial in either district. (Dkt. No. 41 at 8). *Intertrust Techs*., No. 2:19-CV-266-JRG, 2020 U.S. Dist. LEXIS 208572, at *14 ("inventors can be expected to appear for trial in either [d]istrict."); *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-79-JRG-RSP, 2019 WL 3017379, at *3 (E.D.

Tex. July 10, 2019) (party witnesses typically attend trial willingly, so "[t]his factor is directed towards unwilling third-party witnesses."). Viavi contends Crystal California is immaterial because Crystal has failed to meet its burden to identify any Crystal California employees possessing knowledge of relevant information. (*Id*. at 9). Finally, just as Crystal speculates about the potentially knowledgeable Samsung employees in California, Viavi equally speculates about the possibility of Samsung employees stationed in Samsung's Plano, Frisco, and Richardson offices possessing knowledge of relevant information. (*Id*.).

The Court first notes that neither party points to unwilling witnesses that this Court might seek to compel to testify pursuant to Federal Rule of Civil Procedure 45(c)(1)(A). The Patent inventors are already effectively compelled to testify given their employment with Viavi. Also, neither party has identified any specific witnesses at Crystal California or Samsung's California or Texas offices that would realistically need to testify. Again, noting Crystal's burden here, the Court finds that this factor is neutral given both parties' failure to identify specific, unwilling witnesses who can be compelled to testify in N.D. Cal., and are not subject to this Court's subpoena power. *In re Planned Parenthood Fed'n of Am*., No. 22-11009, slip op. at 5 (5th Cir. Oct. 31, 2022) ("the availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'") (citing *Hefferan v. Ethicon Endo-Surgery Inc*., 828 F.3d at 488, 499 (6th Cir. 2016); *Curtis v. Galakatos*, 19 F.4th 41, 53 (1st Cir. 2021)).

### (3) The Cost of Attendance for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *In*

*re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).

Crystal contends that all United States witnesses identified to date are located in N.D. Cal. (Dkt. No. 38 at 11). Viavi responds that the convenience of non-party witnesses, rather than of party witnesses, that is more important and afforded much greater weight. (Dkt. No. 41 at 10). *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012). Viavi further points to the distance any Samsung Texas witnesses would need to travel to N.D. Cal. (*Id.*).

The Court finds that the cost of attendance for willing witnesses would be less in N.D. Cal. than in the EDTX. Although Viavi's employees are under Viavi's control, Viavi has failed to identify any willing witnesses located in the EDTX or substantially closer to the EDTX than to California. Conversely, at least some willing witnesses located in California have been disclosed in discovery. Again, noting that neither party has identified unwilling witnesses in either district, this factor weighs only slightly in favor of transfer.

### (4) All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Crystal argues that given Viavi's three pending cases against two defendants alleging infringement of some of the same patents in the N.D. Cal., this factor favors transfer.[5] (Dkt. No. 38 at 12). While Crystal concedes that the underlying theories put forward in the other suits may

---

[5] *Viavi Solutions, Inc. v. Platinum Optics Tech., Inc.*, 5:20-cv-5501 (N.D. Cal., filed August 7, 2020); *Viavi Solutions, Inc. v. Platinum Optics Tech. Inc.*, 5:21-cv-6655 (N.D. Cal., filed August 27, 2021); *Viavi Solutions, Inc. v. Optrontec Inc.*, 4:19-cv-7578 (N.D. Cal., filed November 18, 2019).

well be different, it nevertheless contends "there will be significant overlap and a familiarity with the patents could preserve time and resources." (*Id.*). *In re Volkswagen of Am. Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Viavi responds that its suits against Optrontec Inc. ("Optrontec") and Platinum Optics Technology Inc. ("PTOT") do not support transfer. (Dkt. No. 41 at 11, 12). First, the Optrontec case, which was before Judge Jeffrey S. White, was stayed near the very onset of the case and is no longer pending. (*Id.*). Second, Viavi's lawsuits against PTOT, pending before Judge Edward J. Davila, involve distinct issues of indirect infringement and, from an expediency perspective, have not yet been set for trial. (*Id.*).

Judicial economy evaluates "practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Although the PTOT cases involve similar patents, the technology and parties are distinguishable from the present case. Moreover, neither claim construction deadlines, nor a trial date has been set in the PTOT cases.[6] In all reality, these other cases are either stayed or have moved relatively little. This level of activity elsewhere does not support Crystal's arguments for judicial economy. In light of these facts and the parties' efforts here to move this case forward, considerations of ease, expense, and efficiency weigh against a transfer to N.D. Cal.

### b) Public Interest Factors

Crystal concedes that administration flowing from Court congestion disfavors transfer. Viavi does not dispute that N.D. Cal. has a greater local interest in deciding this dispute. Neither party convincingly argues that other factors affect the analysis. Thus, on balance, the public interest factors are neutral.

---

[6] Viavi advises that one of the PTOT cases will soon be dismissed. (Dkt. No. 41 at 11).

### c) The Totality of the Factors

The sources of proof and cost of attendance for willing witnesses slightly favors transfer. However, with respect to the source of proof factor, the Fifth Circuit very recently provided guidance concerning this factor when it held that the location of evidence bears much more strongly on the transfer analysis when the evidence is physical in nature. *In re Planned Parenthood Fed'n of Am.*, No. 22-11009, slip op. at 5 (5th Cir. Oct. 31, 2022). Here, Crystal failed to identify any *physical* evidence in N.D. Cal. which would warrant transfer. Additionally, as several courts have previously noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in 14 A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant."). In other words, these factors are not dispositive. Considering the weight of all factors together, the Court gives "paramount consideration" to judicial economy and the time and resources that the Court have parties have already expended.  *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). Given these considerations, the Court concludes that the balance disfavors transfer. In any case, Crystal has not shown that N.D. Cal. is *clearly* more convenient.

The Court finds that Crystal has failed to meet its significant burden to show that the Northern District of California is clearly more convenient than the Eastern District of Texas. Therefore, Crystal's Motion to Transfer (Dkt. No. 38) should be **DENIED**.

## IV.     CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss, Motion to Stay, and Motion to Transfer are hereby **DENIED** in all respects.

**So ORDERED and SIGNED this 10th day of November, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE